UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| PAT NORRIS,<br><br>Plaintiff,<br><br>v.<br><br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>5:11-CV-028-BG<br>ECF |

**REPORT AND RECOMMENDATION**

Pat Norris filed this suit pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. The district court referred this case to the undersigned, who now files this report and recommendation.

The undersigned has considered the administrative record, the arguments of the parties, and the applicable law and recommends that the district court affirm the Commissioner's decision and enter judgment in his favor.

## I. Statement of the Case

Norris claims that she became disabled and unable to work when she was forty-three years old. (Tr. 109, 116.) She claimed she was limited in her ability to work because of neck, back, and chest pain; wrist and hand pain that she attributed to carpal tunnel syndrome; tingling in her fingertips; blackouts; memory loss; and chest pain. (Tr. 34, 137.) She also claimed that she suffered from memory loss and experienced difficulty handling stress and that she quit work because she experienced headaches, dizziness, confusion, and blackouts. (Tr. 137, 166.) At the time she quit

working Norris worked as a housekeeper at a retirement home and prior to that as a home healthcare attendant, a fast food restaurant worker, and a laundry worker. (Tr. 33, 45, 143, 211.)

After a hearing an Administrative Law Judge (ALJ) found that Norris suffered from dysthymic disorder and mild arthritis in the small joints of her hands and that she was incapable of performing her past work but was capable of performing jobs that involved light work. (Tr. 16, 21, 23.) Based on these findings, the ALJ determined that Norris was not disabled. (Tr. 23-24.)

Norris appealed the ALJ's decision, and the Appeals Council denied review. (Tr. 1-3.) Norris thereafter filed this appeal.

## II. Medical History

Norris underwent a psychological evaluation in September 2000. (Tr. 183-88.) The next available medical record is dated April 6, 2008. On that date Norris was examined in an emergency room after she fainted and fell in a bathroom. (Tr. 193.) Physicians determined that she suffered from mild facial trauma as a result of the fall; hypotension or dizziness upon standing; dehydration; and a urinary tract infection. (Tr. 192.) She complained of neck pain as well as generalized pain and weakness and reported that she suffered from arthritis in her knees but that she was otherwise healthy. (Tr. 193.) She was admitted to the hospital and placed on intravenous hydration and treated for the urinary tract infection. (Tr. 192.) Physicians discharged Norris with directions to continue her antibiotic prescription for two days and to engage in activities as tolerated. *Id*.

There are no other medical records until August 2009. At that time Disability Determination Services referred Norris to Addison E. Gradel, Ed.D., for a mental examination. (Tr. 204–213.) Dr. Gradel diagnosed Norris on August 26, 2009, with pain disorder and dysthymic disorder and

assigned a Global Assessment of Functioning (GAF) score of 61/100.[1] (Tr. 206.) The next available records, dated September 3, 2009, were also generated for the purposes of determining disability. (Tr. 209-13.) Piyush Mittal, M.D., examined Norris and found mild arthritis in the small joints of Norris's hands, decreased grip in her right hand, normal range of motion but slight tenderness in her wrists, tenderness in her right shoulder, some muscle spasms in her neck, and tenderness and decreased range of motion in her neck and back. (Tr. 212.) He reported that her gait was normal, her musculoskeletal strength was 5/5 in all extremities, and x-rays of her chest and lumbar spine were normal. *Id*. Dr. Mittal noted that it was questionable as to whether Norris suffered from carpal tunnel syndrome. (Tr. 213.) He acknowledged that she might have "some arthritis, but nothing significant." *Id.* He recommended conservative treatment for the problems in Norris's hands and noted that anti-inflammatory medications and exercise should keep her symptoms under control. Dr. Mittal believed that Norris was depressed and noted that she "[might] need a psychiatric evaluation." *Id*.

Thereafter, Norris was seen for complaints of pain at a clinic where physicians recommended water aerobic therapy, prescribed medications such as naproxen, and referred her to a psychiatrist. (Tr. 237-42.)

## III. Norris's Arguments

Norris claims that the ALJ did not properly evaluate the medical evidence and that he failed to properly evaluate the combination of her impairments. She also claims that the ALJ's determination of her residual functional capacity (RFC) is flawed and that his finding that she could

[1] A GAF score is an assessment of an individual's psychological, social, and occupational functioning based on a hypothetical continuum of mental health and mental illness. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV). A GAF score between 61 and 70 indicates "some mild symptoms" or some difficulty in social or occupational or school functioning. *Id.*

perform the jobs of sorter, machine tender, and conveyor line tender is inconsistent with his determination regarding her RFC.

## IV. The ALJ's Evaluation of the Medical Evidence and Norris's Impairments

Ray H. Brown, Ph.D., tested Brown's Intelligence Quotient (IQ) during an examination in September 2000 and reported that she achieved a verbal IQ of 55, a performance IQ of 73, and a full scale IQ of 63. (Tr. 186.) According to Dr. Brown's notes, a full scale IQ of 63 is within the mentally defective range. *Id*. Dr. Brown noted that Norris's IQ scores suggested "minimal potential to achieve within the normal scope of academic programs and, likewise, her ability to profit from a talk-oriented type of psychotherapy appears to be quite minimal." *Id*. Dr. Brown also reported that Norris exhibited concrete and simplistic thought patterns during other testing, experienced difficulty in reading and understanding materials, and was easily overwhelmed. (Tr. 186–87.) He diagnosed Norris with adjustment disorder and mild mental retardation. (Tr. 187.) Norris claims the ALJ disregarded Dr. Brown's examination and failed to give specific reasons for doing so. She claims the ALJ should have considered Dr. Brown's examination when he determined whether she suffered from an impairment or combination of impairments. In support of her argument, she cites Social Security Ruling 96-2p arguing that the ruling requires the ALJ to give specific reasons for refusing to give weight to a physician's opinion.

Norris's argument is without merit. Social Security Ruling 96-2p applies to the evaluation of treating source opinions. *See* SSR 96-2p, 1996 WL 374188, July 2, 1996 (stating that purpose of the ruling is to explain terms used in the regulations and how policy is applied to treating source opinions). Dr. Brown was not Norris's treating physician. According to the records, he examined Norris on one occasion at the request of a social services agency. (Tr. 183.) In addition, as the

Commissioner noted, Dr. Brown's examination in September 2000 took place more than eight years prior to February 1, 2009, the date on which Norris claims she became disabled. Finally, the ALJ did not ignore Dr. Brown's opinions. He evaluated Dr. Brown's opinions but gave no weight to them because he found that they were not substantiated by the remainder of the record. The ALJ noted that the psychological testing Dr. Gradel conducted on August 26, 2009, demonstrated that Norris's intellectual functioning was within the average range. (Tr. 18, 206.) In addition, the ALJ noted Norris's testimony that, when working, she was able to access and use public transportation, which required her to plan and execute transfers between various bus lines. (Tr. 18, 34.) It is within the ALJ's discretion to determine the credibility of physician's opinions. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citations and internal quotations omitted). The ALJ's "power to judge and weigh evidence includes the power to disregard" evidence and courts must uphold such a determination if supported by substantial evidence. *Id*. at 238.

The court should reject Norris's claim that the ALJ failed to properly evaluate the combination of her impairments because he did not consider her memory loss or depression or the IQ assessments from Dr. Brown's examination in 2000. The ALJ limited Norris to work that was simple in complexity and that would require no interaction with the general public and only superficial interaction with co-workers and supervisors. (Tr. 21, 23.) The ALJ indicated that the limitations were due to problems Norris experienced with mood, memory, and concentration. (Tr. 23.) Thus, even if it were assumed that Norris suffered from memory loss and depression, the ALJ accommodated such limitations by limiting her to simple work.

In addition, the ALJ supported his determination of non-disability with substantial evidence. He noted that, by Norris's own reports and testimony, she was able to handle her own finances,

shopped for groceries, did laundry, watched soap operas on television, navigated the bus system, read, played volleyball, socialized with friends, and had been capable of working successfully in the past. (Tr. 20.) Evidence in the record shows the same and constitutes substantial evidence that supports the ALJ's determination. (Tr. 33-34, 37–38, 204–05)

Norris also claims the ALJ failed to mention evidence from physicians who treated her at Community Health Center of Lubbock in 2010. She argues that treatment notes from the clinic demonstrate that she suffered from pain in her neck, memory loss, and tenderness and stiffness in her spine, multiple joints, hands, shoulders, and knees. She argues that remand is required so that the Commissioner can accurately assess the evidence.

As Norris points out, the ALJ did not specifically discuss treatment notes generated at the clinic. However, his failure to do so does not require remand. The evidence from the clinic shows that Norris was treated at the clinic from February 2010 to May 2010 for complaints of pain. (Tr. 236-42.) According to clinic notes, she was prescribed naproxen at the first visit and reported the following week that the medication helped "a little." (Tr. 241–42.) The following month Norris reported that her back pain was a "little better." (Tr. 239.) Although it was recommended that Norris participate in water aerobics five times per week, she did not do so; nonetheless, she reported at her last appointment that she was "doing good." (Tr. 237, 239.) The treatment notes also show that a physician diagnosed Norris with depression and recommended counseling. (Tr. 239–40.)

The clinic notes do not indicate that Norris's physical or mental impairments were debilitating. To the contrary, the notes show that Norris's symptoms improved with medication, and nothing in the notes contradicts the evidence the ALJ relied on from Drs. Mittal and Gradel. In addition, the ALJ acknowledged that Norris suffered from a mental impairment and that she

experienced pain, and he found that she was limited to simple light work to accommodate her physical and mental imitations. (Tr. 16, 21, 23.) The fact that the ALJ did not specifically discuss the clinic notes does not detract from the substantial evidence that supports his decision. The court must determine whether there is substantial evidence in the record as a whole to support the ALJ's determination. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). As the discussion in this report and recommendation demonstrates, the ALJ's ultimate finding that Norris is not disabled is supported by substantial evidence.

## V. The ALJ's RFC Determination and Finding of No Disability

The ALJ made his determination at the fifth step of the sequential disability process. At the fifth step of the sequential evaluation process, the ALJ assesses the claimant's RFC in order to determine what the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a) (2011). The ALJ then considers the claimant's RFC in combination with his age, education, and work experience to determine whether he is capable of adjusting to and performing any work. 20 C.F.R. § 404.1520(a)(4)(v).

Based on the examination notes from Drs. Gradel and Mittal, the ALJ found that Norris suffered from dysthmic disorder and mild arthritis but maintained 5/5 strength and was capable of performing light work, limited to simple jobs that would allow her to sit or stand at her option; that would require no climbing, crawling, kneeling, or squatting and only occasional stooping and crouching; that would require no constant use of the hands; and that would require no interaction with the general public and only superficial interaction with co-workers and supervisors. (Tr. 18, 21.) The ALJ concluded that Norris was not disabled because her RFC would allow her to work as a sorter, machine tender, and conveyor line tender. (Tr. 16, 21, 23.)

Citing Social Security Ruling 96-9p, Norris claims that the ALJ failed to assess the frequency at which she would have to alternate between sitting and standing. Norris's argument is without merit. The ALJ determined that Norris was limited to jobs in which she would be allowed to sit and stand at her option. Further, Ruling 96-9p, which requires the ALJ to be specific as to the frequency of the claimant's need to alternate between sitting and standing, applies to cases in which the ALJ determines that the claimant has the RFC to perform less than a full range of sedentary work. SSR 96-9P, 1996 WL 374185, July 2, 1996. The ALJ determined that Norris was capable of performing light work. The ruling is therefore inapplicable to this case.

The ALJ relied on testimony from a vocational expert to reach his conclusion that Norris could perform the jobs of sorter, machine tender, and conveyor line tender. (Tr. 23-24.) Once the ALJ identifies work that the claimant can perform, the burden shifts to the claimant to show that he cannot do the identified work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). Thus, a plaintiff who disputes a finding that he is capable of performing jobs a vocational expert has identified must bring evidence contrary to the testimony of the vocational expert. *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005). Norris has not provided evidence that would show that she is incapable of performing the jobs the vocational expert identified.

## VI. Conclusion

For the foregoing reasons, this court recommends that the United States District Court **AFFIRM** the decision of the Commissioner and **DISMISS** Norris's complaint.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2011); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January 19, 2012.

NANCY M. KOENIG
United States Magistrate Judge